UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION
-------------------------------------------------------X
Vamsee Mallineni
                    Plaintiff,

                                        Case No._____

        v.

Absolute Resolutions Investments, LLC

                    Defendant.
-------------------------------------------------------X

## COMPLAINT

## INTRODUCTION

1. Plaintiff Vamsee Mallineni brings this action to secure redress for the false, deceptive, misleading, unconscionable and unfair acts and debt collection practices utilized by Absolute Resolutions Investments, LLC ("ARI") in connection with its attempts to collect a debt from Plaintiff.

2. Plaintiff alleges that Defendant's collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA") and Georgia's Fair Business Practices Act OCGA § 10-1-399 ("FBPA").

3. The FDCPA broadly regulates communications in connection with debt collection; conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements, in connection with the collection

of a debt; and prohibits unfair or unconscionable collection methods. 15

U.S.C. §§1692c 1692d, 1692e, 1692f.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FDCPA claim pursuant to 15

   U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

5. This Court has jurisdiction over Plaintiff's state law claim under diversity

   jurisdiction and supplemental jurisdiction.

6. Venue and personal jurisdiction in this District are proper because:

   a.  The collection lawsuit giving rise to this lawsuit occurred within this

       District.

## PARTIES

7. Plaintiff is an individual natural person who resides in Sumter County and is

   a citizen of Georgia.

8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9. Absolute Resolutions Investments, LLC is an Arizona Delaware limited

   liability company, with its principal place of business located at 8000

   Norman Center Drive – Suite 350 Bloomington, MN 55437.

10. On information and belief, ARI does not maintain a place of business or

    does not keep assets within Georgia.

11. ARI is a purchaser of defaulted consumer debt.

12. Upon information and belief, ARI has filed in excess of 5,000 debt collection lawsuits in the USA in the last 12 months.

13. ARI regularly attempts to collect defaulted debt.

14. ARI's business model is to pay less than ten cents on the dollar for a defaulted debt and then seek to collect the full amount.

15. Part of ARI's collection practices includes filing lawsuits against Georgia residents seeking to collect debts that ARI allegedly purchased after the debts went into default.

16. The principal purpose of ARI is the collection of debts using the mail and telephone.

17. Debt collection is the principal purpose of ARI's business.

18. ARI has no principal purpose other than the purchasing and collecting of defaulted debt.

19. The purchasing and collecting of defaulted debt are ARI's primary business.

20. ARI exists for the primary purpose of purchasing and then seeking to collect defaulted debt.

21. ARI does not offer or extend credit it purchases defaulted debt and then attempts to collect said debt.

22. ARI is licensed as a Debt Collection Agency in various jurisdictions in the USA.

23. ARI is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

## FACTS

24. On or about May 22, 2017 Plaintiff incurred a financial obligation to WebBank related to a personal credit card issued by First Bankcard in the Plaintiff's name (the "Debt"). The Debt was given an account number by First Bankcard and the last four numbers of the account were 9432.

25. The Debt arose out of a transaction in which the money, property, insurance or services which were the subject of the transaction were primarily for personal, family or household purposes, namely fees emanating from a personal loan account in the Plaintiff's name.

26. The personal loan account with WebBank was not opened by Plaintiff for business purposes.

27. The personal loan account with WebBank was not used by Plaintiff for business purposes.

28. Plaintiff's personal credit loan account Debt to WebBank is a "debt" as defined by 15 U.S.C. §1692a(5).

29. The loan documents contained an assignment clause which stated that WebBank uses Avant, Inc to maintain a record of ownership. See paragraph 12 of the loan document attached.

30. The assignment clause went on to say that any assignment of the loan is only valid if it is registered in such record of ownership.

31. The Debt went into default because of non-payment.

32. Because of unfortunate life events during graduate school including Plaintiff being in an accident and his mother passing away plaintiff fell behind on his bills.

33. After the alleged Debt went into default pursuant to the terms of the agreement creating the Debt, the Debt was allegedly sold to ARI.

34. The Debt was in default when it was allegedly purchased by ARI.

35. ARI claims it purchased the defaulted Debt and is now the entity to whom the Debt is owed.

36. ARI contends that the Debt is past-due.

37. ARI contends that the Debt is in default.

38. At all times relevant hereto, ARI acted in an attempt to collect the Debt.

39. In an attempt to collect the Debt, ARI commenced an action ("Collection Action") against Plaintiff by filing a statement of claim ("Collection Complaint") on May 9, 2019 in the Magistrate Court of the State of Georgia, County of Sumter entitled "Absolute Resolutions Investments, LLC v.

Vamsee Mallineni" and designated in that court by Case No. 20-0563. *See* Attached Statement of Claim.

40. The Collection Complaint stated that ARI is successor in interest to WebBank.

41. The Collection Complaint also states that the chain of title is attached as Exhibit B.

42. Exhibit B is titled "Certificate of Loan Sale".

43. Exhibit B states that WebBank originates loans that are serviced by Avant, LLC.

44. Exhibit B further states that the loans identified by loan number on the attached Exhibit A was originated by WebBank.

45. Exhibit B also states "On or about the respective "(Sale Date)" set forth on Exhibit A, [WebBank] transferred… to Avant II, LLC, Avant of New Jersey, LLC…., or Avant of South Carolina, LLC…… each loan identified on exhibit A.

46. The loan identified as Exhibit A appears to be a very poor copy of tiny words which have been truncated and literally cut out and pasted on a piece of paper and then copied. Exhibit A has some of Plaintiff's account information for his WebBank account.

47. Upon receiving the statement of claim, Plaintiff read and understood the statement of claim.

48. Plaintiff is a teacher.

49. Upon receiving the attached statement of claim Plaintiff was frightened, scared, uneasy, unable to eat properly, worried, stressed, nervous and anxious.

50. Plaintiff suffered emotional distress as a result of the statement of claim including helplessness and an invasion of privacy.

51. The statement of claim threated Plaintiff and was very intimidating to Plaintiff because he did not believe that he owed money to ARI and the documents did not establish that ARI had a right to collect the debt.

52. Plaintiff was confused by the statement of claim because he was not aware that he owed money to ARI.

53. Nothing in the statement of claim showed that there was a "chain of title" proving that the debt is owed to ARI.

54. Under Georgia law, ARI was required to prove that it was entitled to bring a breach of contract claim against Plaintiff. But its statement of claim did not show that, causing Plaintiff anguish.

55. Upon receiving the statement of claim, Plaintiff called ARI's law firm disputing the debt and requesting validation.

56. He later followed up this request with a letter. See attached Exhibit B.

57. Plaintiff made multiple phone calls and waited on hold for extended periods of time following up on his dispute and request for validation.

58. Despite this, to this day, Plaintiff has not received any validation.

59. Plaintiff believed that his dispute would give him time to verify that lawsuit's validity and he did not have to respond to the court papers.

60. Defendant's lawyer suggested to Plaintiff that he was doing everything he needed and he was in good standing with them and he should just wait for dispute results and he did not need to respond to the statement of claim.

61. By late September 2020 after still not having heard from Defendant, Plaintiff called and retained the undersigned to deal with statement of claim.

62. The undersigned immediately answered the statement of claim denying that ARI had a right to collect the debt.

63. Plaintiff suffered damages because he retained the undersigned due to ARI's actions.

64. Plaintiff spent many hours dealing with this collection action.

## <u>COUNT I—FDCPA CLAIM</u>

65. Plaintiff incorporates all of the above paragraphs as though fully stated here.

66. ARI is liable for the acts of itself and its attorney under regular agency principals.

67. ARI directed and supervised all of the above actions directed at Plaintiff.

68. ARI reviewed the statement of claim and knew or recklessly permitted it to issue to Plaintiff despite knowing it had no chain of title.

69. § 1692e provides 16 specific prohibited categories of unlawful conduct preceded by a statement that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

70. Defendant's violations include but are not limited to 1692e: (2)A), (3), (5), (10), (12) and (15).

71. Defendant also violated 1692f (1) by attempting to collect money from Plaintiff unlawfully.

## **COUNT II-FBPA CLAIM**

72. ARI engaged in a consumer transaction attempting to collect Plaintiff's debt.

73. A violation of the FDCPA constitutes a violation of the FBPA.

74. Because misrepresenting consumers' financial indebtedness to others has a potential adverse effect on the consumer marketplace and the economy in general, collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices

and clearly falls within the parameters of the state Fair Business Practices
Act.

75. Plaintiff was injured because of and as a result of ARI's deceptive collection
as explained above.

76. Plaintiff was injured by ARI's actions in violation of the FDCPA and the
FBPA because the violations caused him emotional distress, mental anguish
and required him to hire a lawyer as explained above.

77. Plaintiff's anxiety and sense of powerless increased as a result of ARI's
misinformation and faulty statement of claim and his repeated unsuccessful
attempts to validate the debt.


WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and
against ARI for:


(1)     Statutory damages, actual, treble and punitive damages for the
Plaintiff;

(2)     Litigation expenses, attorney's fees and costs of suit;

(3)     Such other or further relief as the Court considers proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury on all issues so triable.

DATED this 30th day of September 2020.

Respectfully submitted,

By: s/ Shimshon Wexler
Ga Bar No. 436163
S Wexler, LLC
2244 Henderson Mill Rd, Ste 108
Atlanta, GA 30345
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com

# EXHIBIT A

## IN THE MAGISTRATE COURT OF SUMTER COUNTY
## STATE OF GEORGIA

**Plaintiff:**

Absolute Resolutions Investments LLC, as successor in
interest to WebBank as serviced by Avant, LLC
C/o Stenger & Stenger, P.C.
2618 East Paris Avenue SE
Grand Rapids, MI 49546

Case No.: _20-0563_

Date Filed: _7-16-20_

vs.

**Defendant(s):**
Vamsee Mallineni
104 Country Club Dr Apt E
Americus GA 31709-4518

**FILED**
IN MAGISTRATE COURT OF
SUMTER COUNTY
This _16_ day of _July 2020_
_Dan S_
Deputy Clerk

### STATEMENT OF CLAIM

☐ Suit on a Note     ☐ Suit on an Account     ☒ Other: Breach of Contract_____
The court has jurisdiction over the Defendant(s) because: ☒ the Defendant(s) is/are a resident of Sumter County.
Plaintiff states the Defendant(s) is/are indebted to Plaintiff as follows:

The claim is in the amount of $6,209.24, which is the amount owed on account number ***9432, formerly with WebBank as
serviced by Avant, LLC. The debt is now owed to Plaintiff. Please see account documentation included as **Exhibit A** and chain of title
attached as **Exhibit B**. Plaintiff is additionally seeking costs of the court, but no interest shall accrue on any judgment received.

The undersigned, being duly sworn, states the foregoing is just and true to the best of his/her information, knowledge, and belief.

Dated: _5/28/20_

Respectfully Submitted,
STENGER & STENGER, P.C.

M. Kyle Floyd (766419)

Sworn to and subscribed before me
this _28_ day of _may_, 2020

Notary Public
☒ Afternoon Trial          ☐ Evening Trial

Attorneys for Plaintiff
2618 East Paris Ave SE
Grand Rapids, MI 49546
Defendant/Counsel Inquiries- Ph:(888)305-7775
Court/Service Inquiries- Ph: (877)988-2280

CARRA B. FLOYD
My Commission Expires
NOTARY PUBLIC
May 21, 2023
GEORGIA

### NOTICE AND SUMMONS

**TO: All Defendant(s)** You are hereby notified that the above named Plaintiff has made a claim and is asking for judgment against you
in the sum as shown in the foregoing statement. YOU ARE REQUIRED TO FILE OR PRESENT AN ANSWER TO THIS CLAIM
WITHIN 30 DAYS OF SERVICE OF THIS CLAIM UPON YOU. IF YOU DO NOT ANSWER, JUDGMENT BY DEFAULT
WILL BE ENTERED AGAINST YOU. Your answer may be filed in writing or given orally in the presence of the Judge or to the
Clerk during regular working hours. The court will hold a hearing upon this claim at a time to be set after your answer is filed. If you
have witnesses, book receipts, or other writings bearing on this claim, you should bring them with you at the time of the hearing. If
you wish to have witnesses summoned, see the court at once for assistance. If you have any claim against the Plaintiff, you should
notify the court at once. If you admit the claim, but desire additional time to pay, you must come to the hearing in person and state the
circumstances to the court. You may come with or without an Attorney.

Magistrate, Sumter County Georgia

SERVICE PERFECTED THIS _16th_
DAY OF _July_, 2020
SERVED: _Vamsee mallineni_
CONSTABLE: _ar-J_

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. RZ075240

# IN THE MAGISTRATE COURT OF SUMTER COUNTY
## STATE OF GEORGIA

_Absolute Resolutions_ )
_Investments LLC_ )
Plaintiff, )
)
vs. )                    CAF # _20-0563_
)
)
_Vamsee Mallineni_ )
Defendant. )

## REIMPOSITION OF STATUTORY DEADLINES

After considering the particular circumstances of this case, and under the authority granted by the Third Order Extending Declaration of Statewide Judicial Emergency signed on June 12, 2020, this Court hereby REIMPOSES all deadlines in this case set by statutes, rules, regulations, and court orders that have been previously suspended, tolled or extended by previous Orders Declaring Statewide Judicial Emergency.  This includes, but is not limited to, statutory time within which to file an answer or appeal.

**So Ordered this 15th day of June, 2020**

_Connie W Johnson_

Judge, Magistrate Court

### CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this notice to the Defendant by attaching it to the Affidavit and Summons of the aforementioned case

Clerk/Deputy

Date _7-16-20_

Note

# Exhibit A

Loan Agreement and Promissory Note

**SECTION 20** OF THIS LOAN AGREEMENT AND PROMISSORY NOTE IS AN ARBITRATION PROVISION. IN THE EVENT OF A DISPUTE, THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION.

Date of Loan: May 22, 2017                                      Loan No.: ☐ 9432

Lender/Creditor:                                               Borrower:
WebBank                                                        vamsee mallineni
c/o Avant                                                      101 F country club dr, Country club Dr
222 N. LaSalle St., Suite 1700                                Americus, GA 31709
Chicago, IL 60601

## FEDERAL TRUTH IN LENDING ACT ("TILA") DISCLOSURES

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 35.95% | $3741.57 | $5775.00 | $9516.57 |

Payment Schedule: You must make 35 monthly payments of $264.34, with the first payment due on Saturday, June 24, 2017, and each subsequent payment due on the same day of each month thereafter, and a final payment of $264.67 plus any unpaid fees, charges, and interest due on Sunday, May 24, 2020.

Security: Your Payment Authorization as set forth in Section 3(b) of this Note secures repayment.

Late Fee: If a payment is not paid in full within 10 days after its due date, you will be charged $25.00.

Prepayment: If you pay off early, either in full or partially, you will not have to pay a penalty and you will not be entitled to a refund of part of the finance charge.

See the remainder of this Note for any additional information about nonpayment, default, and any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## Itemization of Amount Financed

The Amount Financed of $5775.00 is calculated as follows:

$6000.00 Principal Loan Amount

Note

<u>$225.00</u> Administration Fee retained by WebBank

equals

$5775.00 Amount Financed

<u>$5775.00</u> of Amount Financed is given to you directly

<u>$0.00</u> of Amount Financed is paid with respect to your existing loan serviced by Avant (Existing Payoff Amount)

## ADDITIONAL PROVISIONS

1. Parties, Status of Application; Further Steps Before Approval and Funding of Loan.

WebBank, an FDIC-insured, state-chartered industrial bank headquartered in Salt Lake City, Utah, identified above as Lender/Creditor ("WebBank") is the lender of this loan. In this Loan Agreement and Promissory Note ("Note" or "Agreement"), the words "you," "your" and "Borrower(s)" mean the Borrower(s) identified above. The words "we," "us," "our" mean WebBank, and after consummation any person who obtains WebBank's rights in this Note. We have not yet committed to make the Loan. We will only be committed to make the Loan if and when we initiate, in Utah, a transfer of funds from our offices in Utah to the bank account you identify for this purpose in the process of applying for the Loan.

2. Loan Proceeds; Promise to Pay; Interest.

If all conditions to funding the Loan are met (see Section 1) and the Loan is funded: (a) the Loan proceeds will be deposited into Your Bank Account as defined below; and (b) you promise to pay to us (i) the principal sum of $6000.00; (ii) simple interest, which accrues daily on the outstanding principal balance, from May 24, 2017 until the date the Loan is paid in full, at the daily rate of 0.08997260%; and (iii) any and all other amounts that become due and payable under this Note (collectively, the "Debt").

3. (a) Note Payments; Application of Payments.

This Note is payable in 36 substantially equal monthly installments, including (i) 35 payments of $264.34, commencing Saturday, June 24, 2017; and (ii) a single final payment of the remaining amount outstanding under the Loan, payable one month later (the "Maturity Date"). Payments will be due on the same day of each corresponding month. You may choose to repay by either of the options below in the <u>Section 3(b)</u> Payment Authorization as well as any other reasonable form of payment, including but not limited to paper check, money order, debit card or credit card. We have based the payment schedule on the assumption that you will pay all payments as scheduled. If any payment is scheduled on a date we are not open for business, then you agree to pay us on the next business day, and we will credit such payment as if we received it on the appropriate Payment Date. Payments will be applied first to outstanding fees, if any, then to accrued interest, and then to principal. On the Maturity Date, any unpaid Debt will be payable in full. Unless modified by a Payment Plan, the final required payment will likely vary somewhat from prior required payments due to, among other things, early payments or paying more than scheduled, and late payments. If your payment history causes the interest owing to be less than the above payment schedule, we will adjust your final payoff payment to reflect such decrease. If your payment history causes the interest owing to be more than the above payment schedule, then you have the following options: (i) you may instruct us by contacting Avant at 800.712.5407 or support@avant.com to adjust your final payoff payment to reflect such increase; or (ii) unless you contact us by communicating with Avant at 800.712.5407 or support@avant.com and we otherwise agree in writing to increase your final payoff payment, you agree to make payments under a Payment Plan until your obligations are paid in full. Under such Payment Plan, interest will continue to accrue under the terms of this Loan Agreement, and you agree to make payments in an amount not to exceed such amounts as scheduled above, and at such frequency (monthly) as scheduled above until paid in full.

3. (b) Payment Authorization.

The payment method checked below is based on your previous selection. However, you may choose to repay by any other reasonable form of payment, including but not limited to paper check, money order, debit card or credit card. If you wish to change your payment method, you may contact us by communicating with Avant at 800-712-5407 or support@avant.com. You understand that we will process your payments provided in the Payment Schedule

in Section 3(a) above by the method checked below, which gives you convenience and gives us security that payments will be received on time.

X Direct ACH Debit. By selecting the Direct ACH Debit option, you hereby authorize us to initiate an electronic debit to the checking account you elect for this purpose during the application process hereinafter called "Your Bank Account," at the depository financial institution, hereinafter called "Depository." You authorize us to electronically debit Your Bank Account in accordance with these provisions for amounts owing provided on each scheduled payment date in the Payment Schedule and any payment date included in any Payment Plan.

Your Bank Account Information. If there is any missing or erroneous information regarding Depository or Your Bank Account, then you authorize us to verify and correct the information. You promise that the information that you provide to us relating to Your Bank Account corresponds to a legitimate, open and active account and that you have the right to initiate (and to authorize us to initiate) electronic debits from Your Bank Account. You acknowledge that Your Bank Account also includes any bank account that you may designate for payment in the future, and which we verify in writing with you.

Dates in the Payment Schedule. You acknowledge that this authorization is an authorization to initiate an electronic debit to Your Bank Account on or after each scheduled payment date and any payment date, including amounts owing on the final payment due date. That is, this authorization allows us to initiate any decreased amount owing on your final payoff payment date adjusted for your payment history, and any increased amount you instruct us to debit.

Dates under any Payment Plan. You acknowledge that this authorization allows us to initiate an electronic debit to Your Bank Account on or after each scheduled payment date included in the Payment Plan set forth in Section 3(a) of this Note, and any Payment Plan set forth below in the "Other Payment Arrangements" section under this Direct ACH Debit provision. If you default on your obligations under any Payment Plan, you complete your obligations, or we terminate a Payment Plan, then you authorize us to debit Your Bank Account on the dates and in the amounts set forth in your original Payment Schedule in accordance with this Payment Authorization.

Termination. You understand and acknowledge that you may terminate this authorization by notifying us in such time and manner as to afford us and Depository a reasonable opportunity to act on it.

Range of Debits and Notice of Variation. You have the right to receive notice of all varying transfers. Our debits to Your Bank Account will be in an amount between the amount of the scheduled payment (or such lesser amount based on your payment history) and the total amount of any scheduled payments past due at the time we initiate the debit, plus any additional charges and/or fees incurred under this Note. On each scheduled payment date under the Loan Agreement or Payment Plan, we will not debit Your Bank Account for more than the scheduled payment plus the total amount of scheduled payments past due at the time we initiate the debit (plus additional charges and/or fees, as applicable). You may elect to receive notice of the date and amount of each debit that varies from the scheduled payments in advance if you notify us by communicating with Avant at 800-712-5407, or at 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601. If a debit amount will fall outside of the specified range, then we will electronically notify you of the amount of the debit and the date on or after which we will debit such amount, at least ten calendar days before the scheduled debit.

Partial Prepayments. If you make any partial prepayments, then you authorize us to vary the amount of the electronic debit as needed to reflect those partial prepayments.

Additional Amounts. You further authorize us to initiate separate electronic debits to Your Bank Account for any applicable amounts provided in this Note. You also authorize us to initiate separate electronic debits to Your Bank Account for any applicable Late Fee or Dishonored Payment Fee.

Other Payment Arrangements. If we agree, you may change certain terms of this Payment Authorization, including but not limited to (i) a full schedule change of the date on which we will initiate a debit to Your Bank Account and/or the amount of such debit, (ii) a short-term Payment Plan under which any loan payments originally scheduled under this Payment Authorization during the time of such short-term Payment Plan will be moved to the end of the loan, and (iii) any "one off payment" authorized by you which may be in addition to or replace your regularly scheduled payment. For purposes of this Agreement, a "one off payment" is a one-time payment you voluntarily authorize by phone, email, online chat, customer dashboard, or otherwise. If you and we agree to change any terms of this Payment Authorization, we will send you written confirmation of such change, and all other provisions of this Payment Authorization not changed will remain in full force and effect. To

the extent you and we agree to a short term Payment Plan or one-off payment, please note that your obligations under this Payment Authorization will remain in full force and effect, and when you complete such payments or we terminate your short term Payment Plan, you agree that we may again resume debiting Your Bank Account in accordance with this Payment Authorization.

**Full Force and Effect.** This authorization will remain in full force and effect until we have received written notification from you of its termination in such time and in such manner as to afford us and Depository a reasonable opportunity to act on it. You may send written notification to us by communicating with Avant at support@avant.com or by mail to Avant, ATTN: Compliance Department, 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601.

**Error Correction.** In the event we make an error in processing any payment, you authorize us to initiate a payment to or from Your Bank Account to correct the error.

**Re-Initiation.** You authorize us to re-initiate any ACH debit a total of two additional times (if necessary) for the same amount if the ACH debit is dishonored.

You acknowledge that the origination of an electronic debit to Your Bank Account must comply with the provisions of U.S. law.

**Optional Electronic Debit Authorization.** YOU ARE NOT (AND WERE NOT) REQUIRED TO SELECT THIS ELECTRONIC DEBIT AUTHORIZATION TO ENTER A TRANSACTION WITH US. THIS ELECTRONIC DEBIT AUTHORIZATION IS FOR YOUR CONVENIENCE IN PAYING. BY SELECTING THIS OPTION, YOU ACKNOWLEDGE THAT YOU ARE VOLUNTARILY CHOOSING TO PAY ELECTRONICALLY.

__ **Remotely Created Check.** By selecting the Remotely Created Check option, you authorize us to create paper checks, bearing the legend "Authorized by Drawer No Signature Required," or your typed name and/or other information as may be required under applicable law, rather than your handwritten signature, drawn on the checking or savings account you elect for this purpose during the application process, hereinafter called "Your Bank Account," at the depository financial institution you identify during the application process, hereinafter called "Depository." You acknowledge that Your Bank Account also includes any bank account that you may designate in the future, and which we verify in writing with you. For purposes of this authorization, a Remotely Created Check may be otherwise known as, remotely created consumer items, demand drafts, telechecks, preauthorized drafts issued by the drawer of the order, or paper drafts. You agree any designation such as "Authorized by Drawer," "No Signature Required" or your typed name or any other designation as mandated by applicable law will constitute your authorized signature fully reflecting your intent to authenticate any such Remotely Created Check. You further authorize us to submit each check for payment to the Depository in the amount of each payment owing to us under this Note on or after each scheduled payment date and any payment date included in any Payment Plan.

**Your Bank Account Information.** If there is any missing or erroneous information regarding Depository or Your Bank Account, then you authorize us to verify and correct the information. You promise that the information that you provide to us relating to Your Bank Account corresponds to a legitimate, open and active account.

**Dates in the Payment Schedule and Amounts.** You acknowledge that this authorization allows us to create and submit checks from Your Bank Account on or after each scheduled payment date, including amounts owing on the final payment due date. That is, this authorization allows us to create and submit checks for any decreased amount owing on your final payoff payment date adjusted for your payment history, and any increased amount authorized. Furthermore, on each scheduled payment date under the Loan Agreement or Payment Plan, you authorize us to submit a Remotely Created Check to Your Bank Account for scheduled payment, plus the total amount of any scheduled payments past due, plus additional charges and/or fees, as applicable.

**Dates under any Payment Plan.** You acknowledge that this authorization allows us to create and submit checks from Your Bank Account on or after each scheduled payment date included in the Payment Plan, set forth in Section 3(a) of this Note, and any Payment Plan set forth below in the "Other Payment Arrangements" section under this Remotely Created Check provision. If you default on your obligations under any Payment Plan, you complete your obligations, or we terminate a Payment Plan, then you authorize us to create and submit checks from Your Bank Account on the dates and in the amounts set forth in your original Payment Schedule in accordance herewith.

**Termination.** You understand and acknowledge that you may terminate our authority to create and submit checks by communicating with Avant at 800-712-5407, or at 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601.

Partial Prepayments. If you make any partial prepayments, then you authorize us to vary the amount of any remotely created check needed to reflect those partial prepayments.

Additional Amounts. You further authorize us to create and submit separate checks from Your Bank Account for any applicable amounts provided in this Note, including any Late Fee or Dishonored Payment Fee.

Errors. In the event we make an error in creating and submitting checks from Your Bank Account, you authorize us do what is reasonable and necessary to correct the error. If you believe we have presented a Remotely Created Check in a manner not contemplated by this authorization, then please contact Avant at 800-712-5407, or at 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601.

Other Payment Arrangements. If we agree, you may change certain terms of this Remotely Created Check provision including but not limited to (i) a full schedule change of the date on which we will create and submit a check drawn on Your Bank Account and/or the amount of such check, (ii) a short-term Payment Plan under which any loan payments originally scheduled under this Remotely Created Check provision during the time of such short-term Payment Plan will be moved to the end of the loan, and (iii) any "one off payment" made by you which may be in addition to or replace your regularly scheduled payment. For purposes of this Agreement, a "one off payment" is a one-time payment you voluntarily authorize by phone, email, online chat, customer dashboard, or otherwise. If you and we agree to change any terms of this Remotely Created Check provision, we will send you written confirmation of such change, and all other provisions of this Remotely Created Check provision not changed will remain in full force and effect. To the extent you and we agree to a short term Payment Plan or one-off payment, please note that your obligations under this Remotely Created Check provision will remain in full force and effect, and when you complete such payments or we terminate such Payment Plan, you agree that we may again resume creating and submitting a check drawn on Your Bank Account in accordance with this Remotely Created Check provision.

You agree that we may present for payment to your Bank up to two times any Remotely Created Check that is dishonored, including any Remotely Created Check submitted for any applicable Late Fee or Dishonored Payment Fee.

4. Prepayment.

You may prepay the Debt in whole or in part at any time without penalty. That is, you will not incur any additional fee or charge for partial prepayment or prepayment in full.

5. Fees and Charges.

(a) Your loan is subject to a non-refundable Administration Fee of $225.00. This fee is deducted from your Principal Loan Amount and is paid to WebBank as the originator of this loan. The Amount Financed is the Principal Loan Amount less the Administration Fee. Pre-payments will not result in the refund of any Administration Fee amount. You acknowledge that the Administration Fee is considered a part of your Principal Loan Amount and is subject to the accrual of interest.

(b) If a payment is not paid in full within 10 days after its due date, you will be charged $25.00.

(c) We will charge you a Dishonored Payment Fee of $15.00 each time any payment we initiate or you make in connection with this Note or the Debt is returned unpaid.

6. Use of Proceeds.

You promise that you will use the proceeds of the Loan for the purposes you have stated and not for any student loan or any illegal purposes.

7. Default/Remedies.

If: (a) you fail to pay any scheduled installment when due; (b) any bankruptcy, receivership or insolvency proceeding is initiated by or against you or you make any assignment for the benefit of creditors; (c) you die; (d) you fail to keep any promise or meet any other obligation in this Note; or (e) we discover that you have made a material misrepresentation, then, subject to applicable law (including any notice or cure right under applicable law), we may declare all Debt under this Note immediately due and payable, exercise any right provided by applicable law, and, if the Debt is referred for collection to an attorney who is not a salaried employee of ours, charge you reasonable attorneys' fees permitted by applicable law.

WebBank Loan Agreement and Promissory Note

### 8. Waivers.

We may accept late or partial payments, even though marked "paid in full," or with similar language, without losing any of our rights under this Note, and we may delay enforcing any of our rights under this Note without losing them. We do not have to: (a) give notice that amounts due have not been paid ("notice of dishonor"), (b) demand payment of amounts due ("presentment"), or (c) obtain an official certification of nonpayment ("protest"). You hereby waive notice of dishonor, presentment and protest. Even if, at a time when you are in default, we do not require you to pay immediately in full as described above, we will still have the right to do so if you are in default at some other time. Neither our failure to exercise any of our rights, nor our delay in enforcing or exercising any of our rights, will waive those rights in whole or in part, regardless of how often we fail or delay in enforcing or exercising such rights.

To the extent allowed by law, no extension of time for payment of any part of the Debt, and no alteration, amendment or waiver of any provision of this Note or any other document or agreement relating to the Debt or this Note shall release, modify, amend, waive, extend, change, discharge, terminate or affect your unconditional liability, and that of any other person or party who may become liable for the payment of all or part of the Debt.

### 9. Applicable Interest and/or Loan Charge Maximums Will Be Observed.

Notwithstanding any provision of this Note to the contrary, if any law applicable to this Note or the Debt is finally interpreted so that the interest or other charges or fees collected or to be collected in connection with the Debt or this Note exceed the legally permitted limit, then: (a) any such interest, charge or fee shall be reduced by the amount necessary to reflect and be in compliance with the maximum permitted limit; and (b) any sums already collected, to the extent such sums would otherwise exceed a permitted limit, will be refunded to you. We may choose to make this refund by reducing the Debt and/or by making a direct payment to you.

### 10. Severability.

The unenforceability of any provision of this Note shall not affect the enforceability or validity of any other provision of this Note.

### 11. Notices.

All notices and other communications under this Note shall be given in writing and shall be deemed to have been duly given and effective upon receipt if delivered in person, by recognized messenger service or by facsimile, email or other electronic transmission and upon posting for notices we give you on our website. Any notice to you may be delivered in accordance with the consent to electronic communications you have executed or to the address we maintain for you in our records. Any notice to us must be sent to Avant, 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601 unless a different address for notice is later provided in writing by us to you.

### 12. Assignment.

You may not assign any of your obligations under this Note without our written permission, which we are not required to give. We may assign this Note at any time without your permission. Our transfer may be made by causing a registration of transfer in the record of ownership as described below, without providing you with any other notice (except where such notice is required by applicable law). Your obligations under this Note apply to all of your heirs, successors and permitted assigns, if any. Our rights under this Note apply to us and each of our successors and assigns. Ownership of this Loan Agreement and Promissory Note (and rights hereunder, including with respect to principal and interest) shall be registered in a record of ownership maintained by an entity specifically designated for such purposes. You hereby irrevocably appoint Avant, Inc. as your agent acting solely for the purpose of maintaining such record of ownership. Any assignment or transfer of, or participation in, this Note (or rights hereunder) will be valid only if and when it is registered in such record of ownership. You shall treat each person whose name is registered in the record of ownership as the owner, assignee or participant, as applicable, for all purpose of this Loan Agreement and Promissory Note, including, but not limited to, the rights to payments of principal and interest. The record of ownership shall be made available to you in a form and manner determined by the agent maintaining it from time to time upon reasonable prior written notice.

### 13. Governing Law.

Except to the extent, if any, prohibited by applicable law, this Note and all controversies relating to this Note are governed by federal law and, to the extent state law applies, the law of the State of Utah.

### 14. Amendment.

WebBank Loan Agreement and Promissory Note

Except for orally agreed upon changes in the Payment Authorization later confirmed in writing by us, this Note may not be amended, modified or limited except by a written agreement executed by both you and us.

15. Contacting You; Phone and Text Messages.

You authorize us and our affiliates, agents, assigns and service providers (collectively, the "Messaging Parties") to contact you using automatic telephone dialing systems, artificial or prerecorded voice message systems, text messaging systems and automated email systems in order to provide you with information about this Note and the Debt, including information about upcoming payment due dates, missed payments and returned payments. You authorize the Messaging Parties to make such contacts using any telephone numbers (including wireless, landline and VOIP numbers) or email addresses you supply to the Messaging Parties in connection with your Loan application, the Messaging Parties' servicing and/or collection of amounts you owe the Messaging Parties or any other matter. You understand that anyone with access to your telephone or email account may listen to or read the messages the Messaging Parties leave or send you, and you agree that the Messaging Parties will have no liability for anyone accessing such messages. You further understand that, when you receive a telephone call, text message or email, you may incur a charge from the company that provides you with telecommunications, wireless and/or Internet services, and you agree that the Messaging Parties will have no liability for such charges. You expressly authorize the Messaging Parties to monitor and record your calls with the Messaging Parties. You understand that, at any time, you may withdraw your consent to receive text messages and calls to your cell phone or to receive artificial or prerecorded voice message system calls by calling the Messaging Parties at 800-712-5407. To stop text messages, you can also simply reply "STOP" to any text message the Messaging Parties send you. To stop emails, you can follow the opt-out instructions included at the bottom of the Messaging Parties' emails.

16. Credit Reports and Monitoring.

NOTICE OF FURNISHING NEGATIVE INFORMATION. WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT. WE MAY OBTAIN CREDIT REPORTS ON YOU ON AN ONGOING BASIS UNTIL THIS NOTE IS PAID IN FULL.

17. Credit Bureau Disputes.

If you believe we have inaccurately reported information about you or this Note to a credit reporting agency, contact us by communicating with Avant at 800-712-5407 or send an email to us at support@avant.com. You will need to provide your Loan Number along with a copy of your credit bureau report reflecting the information that you believe is inaccurate. If you believe that you have been the victim of identity theft, submit an identity theft affidavit or identity theft report.

18. Bankruptcy.

You promise that you are not a debtor under any proceeding in bankruptcy, have not consulted a bankruptcy attorney in the past six months and have no current intention of filing a petition for relief under the United States Bankruptcy Code. If you file for bankruptcy under the United States Bankruptcy Code, you must contact us in writing and include your Loan Number by communicating with Avant at 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601, Attn: Bankruptcy Notice.

19. Non-Negotiable Instrument.

This Note is not a negotiable instrument.

20. Arbitration Provision.

By signing below, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause"):

Background and Scope.

| What is arbitration? | An alternative to court. | In arbitration, a third party ("Arbiter") solves Disputes in a hearing ("hearing"). You, related third parties, and we, waive the right to go to court. Such "parties" waive jury trials. |
| --- | --- | --- |
| Is it different from court and | Yes. | The hearing is private and less formal than court. Arbiters may limit pre-hearing fact |

WebBank Loan Agreement and Promissory Note

| jury trials? | | finding, called "discovery." The decision is final. Courts rarely overturn Arbiters. |
|---|---|---|
| Who does the Clause cover? | You, Us, and Others. | This Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute. |
| Which Disputes are covered? | All Disputes. | In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes extensions, renewals, refinancings, or payment plans. It includes claims related to collections, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate. |
| Are you waiving rights? | Yes. | You waive your rights to:<br>1. Have juries solve Disputes.<br>2. Have courts, other than small-claims courts, solve Disputes.<br>3. Serve as a private attorney general or in a representative capacity.<br>4. Be in a class action. |
| Are you waiving class action rights? | Yes. | COURTS AND ARBITERS WON'T ALLOW CLASS ACTIONS. You waive your rights to be in a class action, as a representative and a member. Only individual arbitration, or small-claims courts, will solve Disputes. You waive your right to have representative claims. Unless reversed on appeal, if a court invalidates this waiver, the Clause will be void. |
| What law applies? | The Federal Arbitration Act ("FAA"). | This transaction involves interstate commerce, so the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then your state's law governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. |
| Can the parties try to solve Disputes first? | Yes. | We can try to solve Disputes if you call us at 800-712-5407. If this doesn't solve the Dispute, mail us notice, within 100 days of the Dispute date. In your notice, tell us the details and how you want to solve it. We will try to solve the Dispute. If we make a written offer ("Settlement Offer"), you can reject it and arbitrate. If we don't solve the Dispute, either party may start arbitration. To start arbitration, contact an Arbiter or arbitration group listed below. No party will disclose settlement proposals to the Arbiter during arbitration. |
| How should you contact us? | By mail. | Send mail to: 222 N. LaSalle St., Suite 1700, Chicago, Illinois 60601. You can call us at 800-712-5407 or use certified mail to confirm receipt. |
| Can small-claims court solve some Disputes? | Yes. | Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will solve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will only be heard by an Arbiter. |
| Do other options exist? | Yes. | Both parties may use lawful self-help remedies. This includes set-off or repossession and |

WebBank Loan Agreement and Promissory Note

| | | sale of any collateral. Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief. |
|---|---|---|
| Will this Clause continue to govern? | Yes, unless otherwise agreed. | The Clause stays effective unless the parties sign an agreement stating it doesn't. The Clause governs if you rescind the transaction. It governs if you default, renew, prepay, or pay. It governs if your contract is discharged through bankruptcy. The Clause remains effective, despite a transaction's termination, amendment, expiration, or performance. |

Process.

| How does arbitration start? | Mailing a notice. | Either party may mail the other a request to arbitrate, even if a lawsuit has been filed. The notice should describe the Dispute and relief sought. The receiving party must mail a response within 20 days. If you mail the demand, you may choose the arbitration group. Or, your demand may state that you want the parties to choose a local Arbiter. If related third parties or we mail the demand, you must respond in 20 days. Your response must choose an arbitration group or propose a local Arbiter. If it doesn't, we may choose the group. |
|---|---|---|
| Who arbitrates? | AAA, JAMS, or an agreed Arbiter. | You may select the American Arbitration Association ("AAA") (1-800-778-7879) http://www.adr.org or JAMS (1-800-352-5267) http://www.jamsadr.com. The parties may also agree in writing to a local attorney, retired judge, or Arbiter in good standing with an arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules. You may get a copy of these rules from such group. Any rules that conflict with any of our agreements with you, don't apply. If these options aren't available, and the parties can't agree on another, a court may choose the Arbiter. Such Arbiter must enforce your agreements with us, as they are written. |
| Will the hearing be held nearby? | Yes. | The Arbiter will order the hearing within 30 miles of your home or where the transaction occurred. |
| What about appeals? | Appeals are limited. | The Arbiter's decision will be final. A party may file the Arbiter's award with the proper court. Arbitration will solve appeals of a small-claims court judgment. A party may appeal under the FAA. If the amount in controversy exceeds $10,000.00, a party may appeal the Arbiter's finding. Such appeal will be to a three-Arbiter panel from the same arbitration group. The appeal will be de novo, and solved by majority vote. The appealing party bears appeal costs, despite the outcome. |

Arbitration Fees and Awards.

| Will we advance Arbitration Fees? | Yes, but you pay your costs. | We will advance your "Arbitration Fees" if you ask us to. This includes filing, administrative, hearing, and Arbiter's fees. You pay your attorney fees and other expenses. |
|---|---|---|
| Are damages and attorney fees possible? | Yes, if allowed by law. | The Arbiter may award the same damages as a court. Arbiters may award reasonable attorney fees, and expenses, if allowed by law. |
| Will you pay Arbitration | No. | If the Arbiter awards you funds, you don't reimburse us the Arbitration Fees. |

WebBank Loan Agreement and Promissory Note

| Fees if you win? | | |
|---|---|---|
| Will you ever pay Arbitration Fees? | Yes. | If the Arbiter doesn't award you funds, then you must repay the Arbitration Fees. If you must pay Arbitration Fees, the amount won't exceed state court costs. |
| What happens if you win? | You could get more than the Arbiter awarded. | If an Arbiter's award to you exceeds our last Settlement Offer, we will pay the greater of the award amount or $7500 in addition to your attorneys' fees and reasonable expert witness costs and other costs incurred. |
| Can an award be explained? | Yes. | A party may request details from the Arbiter, within 14 days of the ruling. Upon such request, the Arbiter will explain the ruling in writing. |

### Other Options.

| If you don't want to arbitrate, can you still get a transaction? | Yes. You can get our services and decide not to arbitrate. | Consider these choices: <br><br> 1. Informal Dispute Resolution. Contact us, and attempt to settle any Disputes. <br> 2. Small-claims Court. Seek to solve Disputes in small-claims court, within state law limits. <br> 3. Opt-Out of Arbitration. Sign and then timely opt-out. |
|---|---|---|
| Can you opt-out of the Clause? | Yes. Within 60 days. | Write us within 60 calendar days of signing your agreement to opt-out of the Clause for that agreement. List your name, address, account number and date. List that you "opt out." If you opt out, it will only apply to that agreement. |

21. State Notices and Special Provisions.

All Borrowers, including California / New York/ Rhode Island / Utah / Vermont Residents

You give us and our agents, successors, and assigns permission to access your credit report in connection with any transaction, or extension of credit, and on an ongoing basis, for the purpose of reviewing this Note, taking collection action on this Note, or for any other legitimate purposes associated with this Note. Upon your request, you will be informed of whether or not a consumer credit report was ordered, and if it was, you will be given the name and address of the consumer reporting agency that furnished the report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

All Borrowers, Including Iowa / Maine / Missouri / Nebraska / Oregon / Texas / Utah / Washington Residents

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt, including promises to extend or renew such debt, are not enforceable. To protect you (borrower) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify.

All Borrowers, including Iowa and Kansas Residents

NOTICE TO CONSUMER:

1. Do not sign this Contract before you read it.

2. You are entitled to a copy of this Contract.

3. You may prepay the unpaid balance at any time without penalty.

WebBank Loan Agreement and Promissory Note

California Residents

A married applicant may apply for a separate account.

Maryland Residents

To the extent, if any, that Maryland law applies to this Note, we elect the Credit Grantor Closed-End Credit Provisions in Title 12, Subtitle 10 of the Commercial Law Code as the applicable Maryland law.

Massachusetts Residents

Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

New Hampshire Residents

You shall be awarded reasonable attorney's fees if you prevail in any legal action you bring against us or we bring against you. If you successfully assert a partial defense, set-off or counterclaim against us in an action we bring against you, the court or arbitrator may withhold from us the entire amount or such portion of the attorney's fees as it considers equitable. You or your attorney may file a complaint with the New Hampshire Commissioner of Banking, State of New Hampshire Banking Department, 53 Regional Drive, Suite 200, Concord NH 03301. Instructions for filing complaints can be found on the Commissioner's website at www.nh.gov/banking/consumer-assistance/complaint.htm.

Ohio Residents

The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

Married Wisconsin Residents

If you are married: (1) You confirm that the Loan is being incurred in the interest of your marriage or family. (2) No provision of any marital property agreement, unilateral agreement, or court decree under Wisconsin's Marital Property Act will adversely affect a creditor's interest unless prior to the time credit is granted, the creditor is furnished a copy of that agreement or decree or is given complete information about the agreement or decree. (3) You understand and agree that we will provide a copy of this Note to your spouse for his or her information.

BY CONSIDERING AND TAKING ACTION ON YOUR APPLICATION FOR THE LOAN, WE AGREE TO THE TERMS OF THIS NOTE, INCLUDING THE ARBITRATION PROVISION.

BY CLICKING THE BUTTON BELOW READING "I AGREE," YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND HAVE READ A COMPLETED COPY OF THIS NOTE, YOU UNDERSTAND THIS NOTE AND YOU AGREE TO ITS TERMS, INCLUDING THE ARBITRATION PROVISION.

| CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. | NOTICE TO BORROWER<br><br>(a) DO NOT SIGN THIS NOTE BEFORE YOU READ THE WRITING ABOVE, EVEN IF OTHERWISE ADVISED.<br><br>(b) DO NOT SIGN THIS NOTE IF IT CONTAINS ANY BLANK SPACES.<br><br>(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.<br><br>(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE. |

WebBank Loan Agreement and Promissory Note

[I AGREE]

Customer Signature:
Name: vamsee mallineni
Last 4 SSN: 0503
Signed At: May 22, 2017 13:58
Customer ID: 12316880
SIGNATURE: 80573c3503321935c7ffd874fef11b43ea397848

Notice to Arizona Borrowers: You may request that the initial disclosures prescribed in the Truth in Lending Act (15 United States Code §§ 1601 through 1666j) be provided in Spanish before signing any loan documents.

Aviso a solicitantes de prestamos en Arizona: Tiene el derecho de solicitar la declaración de divulgación inicial prescribida en la legislación de Veracidad de Crédito (Truth in Lending Act-15 United States Code §§ 1601 through 1666j) en Español antes de firmar cualquier documento de prestamo.

| | | | | Total | |
| Loan ID | | ☐49432 | | | |

Loan ID       ☐49432
Consumer Name    VAMSEE MALLINENI
Amount Issued      $6,000.00
Funding Date       05/24/2017
Charge Off Date    06/29/2018     Charge Off Balance    $6,234.24
Cut Off Date       12/17/2018
Sale Date        12/17/2018      Sale Balance       $6,209.24

| Date | Principal Outstanding Day Begin | Interest Outstanding Day Begin | Fees Outstanding Day Begin | Total Amount Collected on Date | Principal Paid |
|---|---|---|---|---|---|
| 05-24-2017 | $6,000.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05-31-2017 | $6,000.00 | $37.79 | $0.00 | $0.00 | $0.00 |
| 06-26-2017 | $6,000.00 | $177.96 | $0.00 | $264.34 | $97.00 |
| 06-30-2017 | $5,903.01 | $31.87 | $0.00 | $0.00 | $0.00 |
| 07-24-2017 | $5,903.01 | $159.34 | $0.00 | $264.34 | $105.00 |
| 07-31-2017 | $5,798.01 | $36.52 | $0.00 | $0.00 | $0.00 |
| 08-31-2017 | $5,798.01 | $198.23 | $0.00 | $0.00 | $0.00 |
| 09-01-2017 | $5,798.01 | $203.44 | $0.00 | $264.34 | $60.90 |
| 09-25-2017 | $5,737.11 | $123.76 | $0.00 | $264.34 | $145.61 |
| 09-30-2017 | $5,591.50 | $30.18 | $0.00 | $0.00 | $0.00 |
| 10-31-2017 | $5,591.50 | $186.14 | $0.00 | $0.00 | $0.00 |
| 11-03-2017 | $5,591.50 | $201.23 | $0.00 | $264.34 | $63.11 |
| 11-30-2017 | $5,528.39 | $134.30 | $0.00 | $0.00 | $0.00 |
| 12-01-2017 | $5,528.39 | $139.27 | $0.00 | $264.34 | $125.07 |
| 12-26-2017 | $5,403.32 | $121.27 | $0.00 | $264.34 | $152.52 |
| 12-31-2017 | $5,250.80 | $33.07 | $0.00 | $0.00 | $0.00 |
| 01-31-2018 | $5,250.80 | $179.52 | $0.00 | $0.00 | $0.00 |
| 02-28-2018 | $5,250.80 | $311.80 | $0.00 | $0.00 | $0.00 |
| 03-12-2018 | $5,250.80 | $368.49 | $25.00 | $0.00 | $0.00 |
| 03-31-2018 | $5,250.80 | $458.26 | $25.00 | $0.00 | $0.00 |
| 04-13-2018 | $5,250.80 | $519.67 | $50.00 | $0.00 | $0.00 |
| 04-30-2018 | $5,250.80 | $599.98 | $50.00 | $0.00 | $0.00 |
| 05-14-2018 | $5,250.80 | $666.12 | $75.00 | $0.00 | $0.00 |
| 05-31-2018 | $5,250.80 | $746.44 | $75.00 | $0.00 | $0.00 |
| 06-12-2018 | $5,250.80 | $803.13 | $100.00 | $0.00 | $0.00 |
| 06-29-2018 | $5,250.80 | $883.44 | $100.00 | $0.00 | $0.00 |
| 06-30-2018 | $5,250.80 | $888.16 | $100.00 | $0.00 | $0.00 |
| 07-13-2018 | $5,250.80 | $949.58 | $125.00 | $0.00 | $0.00 |
| 07-31-2018 | $5,250.80 | $1,034.62 | $125.00 | $0.00 | $0.00 |
| 08-14-2018 | $5,250.80 | $1,100.76 | $150.00 | $0.00 | $0.00 |
| 08-31-2018 | $5,250.80 | $1,181.07 | $150.00 | $0.00 | $0.00 |
| 09-17-2018 | $5,250.80 | $1,261.38 | $175.00 | $0.00 | $0.00 |
| 09-30-2018 | $5,250.80 | $1,322.80 | $175.00 | $0.00 | $0.00 |
| 10-12-2018 | $5,250.80 | $1,379.49 | $200.00 | $25.00 | $0.00 |
| 10-31-2018 | $5,250.80 | $1,469.25 | $175.00 | $0.00 | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11-30-2018 | $5,250.80 | $1,610.98 | $175.00 | $0.00 | $0.00 |
| 12-17-2018 | $5,250.80 | $1,691.29 | $175.00 | $0.00 | $0.00 |
| 2018-12-17 Summary Totals | $5,250.80 | $1,691.29 | $175.00 | $1,875.38 | $749.21 |

| Interest Paid | Late Fees Paid | Nsf Fees Paid | Credits Collected Principal | Credits Collected Interest | Credits Collected Fees | Fees Added | Principal Outstanding After Payment | Interest Outstanding After Payment |
|---|---|---|---|---|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,000.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,000.00 | $37.79 |
| $167.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,903.01 | $10.62 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,903.01 | $31.87 |
| $159.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,798.01 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,798.01 | $36.52 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,798.01 | $198.23 |
| $203.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,737.11 | $0.00 |
| $118.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,591.50 | $5.03 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,591.50 | $30.18 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,591.50 | $186.14 |
| $201.23 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,528.39 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,528.39 | $134.30 |
| $139.27 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,403.32 | $0.00 |
| $111.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $9.45 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $33.07 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $179.52 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $311.80 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $5,250.80 | $368.49 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $458.26 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $5,250.80 | $519.67 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $599.98 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $5,250.80 | $666.12 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $746.44 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $5,250.80 | $803.13 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $883.44 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $888.16 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $5,250.80 | $949.58 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $1,034.62 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $5,250.80 | $1,100.76 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $1,181.07 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $5,250.80 | $1,261.38 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $1,322.80 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $25.00 | $5,250.80 | $1,379.49 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $1,469.25 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $1,610.98 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,250.80 | $1,691.29 |
| | | | | $807.85 | $100.00 | | $5,250.80 | $883.44 |
| $1,101.17 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | | | |

| Fees Outstanding After Payment | Outstanding Payoff Balance | Next Business Day | Cash Movement Date |
|---|---|---|---|
| $0.00 | $6,000.00 | FALSE | |
| $0.00 | $6,037.79 | FALSE | |
| $0.00 | $5,913.63 | FALSE | |
| $0.00 | $5,934.88 | FALSE | |
| $0.00 | $5,798.01 | FALSE | |
| $0.00 | $5,834.53 | FALSE | |
| $0.00 | $5,996.24 | FALSE | |
| $0.00 | $5,737.11 | FALSE | |
| $0.00 | $5,596.53 | FALSE | |
| $0.00 | $5,621.68 | FALSE | |
| $0.00 | $5,777.64 | FALSE | |
| $0.00 | $5,528.39 | FALSE | |
| $0.00 | $5,662.69 | FALSE | |
| $0.00 | $5,403.32 | FALSE | |
| $0.00 | $5,260.25 | FALSE | |
| $0.00 | $5,283.87 | FALSE | |
| $0.00 | $5,430.32 | FALSE | |
| $0.00 | $5,562.60 | FALSE | |
| $25.00 | $5,644.29 | FALSE | |
| $25.00 | $5,734.06 | FALSE | |
| $50.00 | $5,820.47 | FALSE | |
| $50.00 | $5,900.78 | FALSE | |
| $75.00 | $5,991.92 | FALSE | |
| $75.00 | $6,072.24 | FALSE | |
| $100.00 | $6,153.93 | FALSE | |
| $100.00 | $6,234.24 | FALSE | |
| $100.00 | $6,238.96 | FALSE | |
| $125.00 | $6,325.38 | FALSE | |
| $125.00 | $6,410.42 | FALSE | |
| $150.00 | $6,501.56 | FALSE | |
| $150.00 | $6,581.87 | FALSE | |
| $175.00 | $6,687.18 | FALSE | |
| $175.00 | $6,748.60 | FALSE | |
| $175.00 | $6,805.29 | FALSE | |
| $175.00 | $6,895.05 | FALSE | |

| | | |
|---|---|---|
| $175.00 | $7,036.78 | FALSE |
| $175.00 | $7,117.09 | FALSE |
| $75.00 | $6,209.24 | |

# Exhibit B

## CERTIFICATE OF LOAN SALE

WebBank, a Utah-chartered industrial bank located in Salt Lake City, Utah ("Transferor"), hereby certifies that:

1. Transferor originates loans that are serviced by Avant LLC (f.k.a. Avant, Inc., f.k.a. AvantCredit, Inc.) ("Servicer").

2. Each of the loans identified by loan number on the attached Exhibit A (each, a "Loan") was originated by WebBank.

3. On or about the respective "(Sale Date)" set forth on Exhibit A, Transferor transferred or otherwise conveyed to Avant II, LLC, Avant of New Jersey, LLC (f.k.a. AvantCredit of New Jersey, LLC), or Avant of South Carolina, LLC (f.k.a AvantCredit of South Carolina, LLC) ("Transferee") each Loan identified on Exhibit A.

4. Transferor transferred, assigned, and conveyed to Transferee all right, title and interest the Transferor held in each Loan.

5. Servicer was the servicer of each Loan from the origination of the Loan to the sale by Transferor to Transferee. In its role as servicer of the Loan, during the period Transferor owned the Loan, Servicer kept and maintained business records on behalf of WebBank in the regular course of business.

WEBBANK

By: _Jon Sargent_

Name: Jon Sargent
Title: VP/Controller
Date: 9/25/2019

Sworn to before me 9/25/19

_____
(Notary Stamp)

JARED E MCMULLIN
Notary Public - State of Utah
Comm. No. 691107
My Commission Expires on
Oct 4, 2020

## CERTIFICATE OF CONFORMITY

STATE OF UTAH
COUNTY OF SALT LAKE

The undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the State of Utah and is a resident of Salt Lake County, in the State of Utah; that he/she is a person duly qualified to make this certificate of conformity pursuant to the laws of the State of Utah; that the foregoing acknowledgment by ___Jon Sargent___ named in the foregoing instrument taken before a notary in the State of Utah was taken in the manner prescribed by such laws of the State of Utah, being the State in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in such state.

9/27/19
Date

_Julian Tippets_
Attorney at law for the State of Utah

Exhibit A
Avant, LLC

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Serial Number | Loan Number | Sale Date | Debt Sale Date | Debt Buyer |
| 2838 | | | 5/24/2017 | | |
| 2839 | 2838 | 9432 | | 12/17/2018 | Absolute Resolutions Corporation |

Schedule 1
Avant, LLC
12/17/2018

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| | loan_id | loan_amount | first_name | last_name | social_security_number | home_phone | language_preference 2 income_type 2 | income_type employment |
| 1 | | | | | | | | |
| 2573 | 9432 | 6000 | VAMSEE | MALLINENI | 0503 | [redacted] | | employment |

Schedule 1
Avant, LLC
12/17/2018

| employer_name | employer_address_1 | employer_address |
|---|---|---|
| 2573 sumter county schools | 101 F country Club Dr | |

Schedule 1
Avant, LLC
12/17/2018

| | L | M | N | O | P | Q |
|---|---|---|---|---|---|---|
| | employer_city | Employer_state | employer_zip | employer_phone_number | monthly_net_income | mobile_phone |
| 1 | 2573 Americus | GA | 31709 | | 4800 | |

Schedule 1
Avant, LLC
12/17/2018

| | R | S | T | U | V |
|---|---|---|---|---|---|
| | Address_1 | address_2 | City | | |
| 1 | | | | | |
| 2573 | 101 F COUNTRY CLUB DR | COUNTRY CLUB DR | AMERICUS | GA | 31709 |

Schedule 1
Avant, LLC
12/17/2018

| | W | X | Y | Z | AA | AB | AC | AD |
|---|---|---|---|---|---|---|---|---|
| | email | do_not_email | funding_date | date_of_birth | signed_contract_date | bank_account | bank_routing_number | bank_account_type |
| 1 | | | | | | | | |
| 2573 | | f | 5/24/2017 | /1985 | 5/22/2017 | | | checking |

Schedule 1
Avant, LLC
12/17/2018

| | AE | AF | AG | AH | AI | AJ | AK | AL | AM |
|---|---|---|---|---|---|---|---|---|---|
| | loan_purpose | apr | loan_term | registration_ip | manual_auto_... | date_of_delinquency | charge_off_date | bankruptcy_status | time_zone_registration_date |
| 1 | | 0.3595 | 36 | | manual-dial | 3/31/2018 | 6/29/2018 | | |
| 2573 | Other | | | | | | | | |

Schedule 1
Avant, LLC
12/17/2018

| AN | AO | | AP | AQ | AR |
|---|---|---|---|---|---|
| dmc_pos_reported_status | dmc_cncl_date | dmc_agency_name | | | |
| 2573 | | | | | |

Schedule 1
Avant, LLC
12/17/2018

| | AS | | AT | | AU | AV |
|---|---|---|---|---|---|---|
| | disclosure number | originator | filing entity | | | assignor |
| 1 | 2573 | WebBank | Avant Loans Funding Grantor Trust 2017-B | | | Avant, LLC |

Schedule 1
Avant, LLC
12/17/2018

| | AW | AX | AY | AZ | BA |
|---|---|---|---|---|---|
| 1 | current_market_place_purchaser_of_collateral_owner... | date_last_paid | amount_last_paid | charge_off_principal_outstanding | ... |
| 2573 | ABS_2017_B | 12/26/2017 | 264.34 | 5250.8 | 833.44 |

Schedule 1
Avant, LLC
12/17/2018

| | BB | BC | BD | BE | BF |
|---|---|---|---|---|---|
| | charge_off_total_outstanding | charge_off_total_outstanding | post_charge_off_payments | post_charge_off_credits | |
| 1 | | | | | |
| 2573 | 100 | 6234.24 | 0 | 25 | 6209.24 |

# EXHIBIT B

Vamsee Mallineni

104 E Country Club Dr

Americus, GA 31709


Stenger & Stenger, P.C.

2618 East Paris Avenue SE

Grand Rapids, MI 49546

Re: Case No: 20-0563

This is in response to your communication of 07/16/2020, a copy of which is enclosed along with this letter. On 07/30/2020, I called in response to the attached documents and spoke to debt collector who identified as Jordan. I informed him that I am requesting validation of the debt for the above account and followed up with the same person on 08/17/2020 during which Jordan asked me to follow up in two weeks if no response is received. Upon receiving no response from you, I called again on 09/02/2020 and spoke to a person who identified as Roosevelt and when inquired, I was told that I need to call back to check on the dispute status in a week. After long wait times and never ending holds for many time, I was able to connect with a different person on 09/5/2020 who identified as Jevon again to inquire about the status of this dispute process.

Under the Fair Debt Collection Practices Act, you are required to respond to my request for validation within 30 days of receipt of my communication. However, it has been more than 30 days, and I have yet to receive a response. Under both State and Federal consumer law I have the right to get have my debt validated, and you are obligated to respond within the statutory time limit.

Failure to respond to my requests for validation is a violation of the Fair Credit Reporting Act and may result in an investigation of your company by the Federal Trade Commission.

Any attempt to collect on this debt without properly validating would be in violation of the FDCPA and State consumer protection laws. Should you continue to attempt to collect this debt without validation, I have the right to sue you in small claims court and subject you to a fine of $1000 per violation, as well as my attorney fees and court costs as damages.

In addition, I would like to remind you that you are legally obligated not to report a debt that has not been properly validated to any of the credit bureaus. I understand that due to the high volume of communications you receive, my previous communication may have been misplaced or not yet reviewed due to an oversight. However, I am sure you wish to resolve this matter as quickly as possible and avoid any unnecessary complications. Should you fail to respond to this letter within 15 business days, I will not hesitate to report these violations my State's Attorney General, the Federal Trade Commission, and file a complaint with the Better Business Bureau.

**Signature:** M.V̧V̧

**Name:** Vamsee Mallineni